UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JEFFREY SCHUYLER, individually and<br>on behalf of all others similarly situated, | ) <br> ) <br> ) | |
| Plaintiff, | ) | NO. 5:13-cv-00521-NAM-ATB |
| | ) | |
| vs. | ) <br> ) | |
| CRAWFORD RESTAURANT GROUP, LLC,<br>RALPH CRAWFORD d/b/a RALPH<br>CRAWFORD ENTERPRISES, and<br>MCDONALD'S CORPORATION, | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

| HACKER MURPHY LLP | FISHER & PHILLIPS LLP |
|---|---|
| James Hacker | Joel W. Rice |
| Ryan M. Finn | Jason D Keck |
| 7 Airport Park Blvd. | 10 South Wacker Drive |
| Latham, NY 12110 | Suite 3450 |
| (Counsel for Plaintiff) | Chicago, Illinois 60606 |
| | (Counsel for Crawford |
| | Restaurant, LLC and Ralph |
| | Crawford d/b/a Ralph |
| | Crawford Enterprises) |

i

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………1

I.  FACTUAL AND PROCEDURAL BACKGROUND…………………………………2

II.  TERMS OF THE PROPOSED SETTLEMENT……………………………………3

  A.  The Class……………………………………………………………4

  B.  The Settlement Fund……………………………………………………4

  C.  Class Notice and Payments to Claimants………………………………4

  D.  Releases……………………………………………………………..6

  E.  Allocation Formula……………………………………………………6

  F.  Attorneys' Fees……………………………………………………..6

  G.  Settlement Claims Administrator……………………………………7

III.  ARGUMENT AND AUTHORITIES……………………………………..……7

  A.  Standard……………………………………………………………7

  B.  The Proposed Settlement Is Fair And Adequate To The Class………………8

    1.  Litigation Through Trial Would Be Complex, Costly,
        And Long (*Grinnell* Factor 1)………………………………………...8

    2.  The Reaction Of The Class Is Positive (*Grinnell* Factor 2)…………..10

    3.  Discovery Has Advanced Far Enough To Allow The Parties
        To Resolve The Case Responsibly (*Grinnell* Factor 3)………………11

    4.  Plaintiff Would Face Real Risks If The Case Proceeded
        (*Grinnell* Factors 4 and 5)………………………………………12

    5.  Establishing A Class And Maintaining It Through Trial Would
        Not Be Simple (*Grinnell* Factor 6)………………………………..12

    6.  Defendants' Ability To Withstand A Greater Judgment Is Not
        Clear (*Grinnell* Factor 7)…………………………………………13

   **7.**  **The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**…………………………………………....…14

   **8.**  **The Negotiation Process and the Opinion of Competent Counsel**…………………………………………………………..15

 **C.**  **Plaintiff's Proposed Attorneys' Fees Are Reasonable**…………………………17

 **D.**  **The Notice Provided To Class Members Satisfies Due Process Requirements**…………………………………………………………...…18

**IV.**  **CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**………..20

 **A.**  **Numerosity**………………………………………………………………21

 **B.**  **Commonality**………………………………………………………...………21

 **C.**  **Typicality**……………………………………………………………...…22

 **D.**  **Adequacy**………………………………………………………………23

 **E.**  **Certification Of The Class For Settlement Purposes Pursuant To Rule 23(b)(3) Is Appropriate**…………………………………………………24

   **1.**  **Common Questions Predominate**……………………………..…24

   **2.**  **A Class Action Is A Superior Mechanism For Settlement Purposes**……………………………………………25

**V.**  **DISBURSEMENT OF THE SETTLEMENT FUND TO CLAIMANTS**…………..26

**CONCLUSION**…………………………………………………………………27

FPDOCS 30251892.1

# TABLE OF AUTHORITIES

## SUPREME COURT AUTHORITY

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997) ...…………………….....13, 24, 26

*Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980) …...……………………………..……18

*Carson v. American Brands, Inc.*, 450 U.S. 79, 88 (1981) ...…………………………………..8

*Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982) …………………………………22

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ………………………18

## CIRCUIT COURT AUTHORITY

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) …………………………22

*Baffa v. Donaldson, Lufkin & Jenrettee Sec. Corp.*, 222 F. 3d 52, 60 (2d Cir. 2000) …………..23

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ………………………*passim*

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108
(2d Cir. 2007) ...…………………………………………………………………………………24

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...…………………..……………………..9

*Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006) ...……………………..………23

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ...………..…………..17

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ….…………………………………..…25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ……………………………….…..26

*In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001) …………...…25

*Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000) …………………………………………....8

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ……………………………………....23

*Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ……………………………………………14

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54
(2d Cir. 1983)……………………………………………………………………………………22

iv

*Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ………….…..……………… …..….23

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.3d 456 (2d Cir. 1982) …....…………………9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ...…………………..7

*Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988) …..………………………………..…18

*Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) …..……………………………………16

## DISTRICT COURT AUTHORITY

*Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ………….…..…15

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ...….20

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001) …..………………….……..…..22

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 598 (D.N.J. 2010) ………………….....…11

*Diaz v. Eastern Locating Service, Inc.*, No. 10 Civ 4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010) ...………………………………………………………………….……23

*Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 122 (S.D.N.Y. 2001) ……………..10

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) .....24

*Kamean v. Local 363, Int'l Bhd. Of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986) ………..22

*Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) ..………………….…25

*McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005) …..…………………….…25

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) …..……………….…..…25

*Novella v. Westchester County*, 443 F. Supp. 2d 540, 546-47 (S.D.N.Y. 2006) ……………...…21

*In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ………....10

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ........................................................................................8, 11, 12, 14

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-4318, 2001 WL 709262 at *3 (S.D.N.Y. June 22, 2001) …...……………………………………………………….……11

*In re Global Crossing Securities and Erisa Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004) …..….13

FPDOCS 30251892.1

*In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969) ….…………………………..…12

*In re PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ………....10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 164 F.R.D. 362, 368 (S.D.N.Y. 1996) ….………18

*In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 284 (S.D.N.Y. 1999) ……………….....…13, 16

*In re Visa Check/MasterMoney Antitrust Litig.,* 297 F. Supp. 2d 503, 510
(E.D.N.Y. 2003) ……………………………………………………………………………..10, 16

*Polar Int'l Brokerage Corp. v. Reeve,* 187 F.R.D. 108, 112 (S.D.N.Y. 1999) ….…..…………..7

*Torres v. Gristede's Operating Corp.,* No. 04 Civ. 4416, 2006 U.S. Dist.
LEXIS 74039, at \*39 (S.D.N.Y. Sept. 28, 2006) …..………………………………...……22, 25

*Toure v. Cent. Parking Sys.,* 2007 WL 2872455, at \*7 (S.D.N.Y. Sept. 28, 2007) ………..……23

*Town of New Castle v. Yonkers Contracting Co.,* 131 F.R.D. 38, 40-41 (S.D.N.Y. 1990) ……..21

*Weber v. Gov't Employees Ins. Co.,* 262 F.R.D. 431, 441 (D.N.J. 2009) ………………………11

**FEDERAL RULES**

Fed. R. Civ. P. 23, *et. seq.*……………………………………………………………………*passim*

**OTHER SOURCES**

Conte, Alba & Newberg, Herbert B., *Newberg on Class Actions,* (4th ed. 2002) ………………20

MANUAL FOR COMPLEX LITIGATION, THIRD § 30.43 (1995) ….……………………16

FPDOCS 30251892.1

## INTRODUCTION

Plaintiff Jeffrey Schuyler ("Plaintiff") and Defendants Crawford Restaurant Group, LLC, Ralph Crawford d/b/a Ralph Crawford Enterprises (the "Crawford Defendants") hereby move the Court for final approval of the proposed class settlement. McDonald's USA, LLC (incorrectly identified as McDonald's Corporation in Plaintiff's First Amended Complaint) ("McDonald's") (collectively referred to herein as "Defendants") (together with Plaintiff and the Crawford Defendants, the "Parties") is not a movant but is an intended beneficiary of the settlement.

On May 13, 2014, this Court preliminarily approved the class action settlement reached in this matter (the "Settlement"). [D. 58]. The Court also approved the procedures contained in the Joint Stipulation of Class Settlement and Release of Claims (the "Stipulation") for disseminating notice of the Settlement to eligible class members ("Class Members"). [D. 57-3]. On June 17, 2014, the Crawford Defendants filed a Joint Motion to Amend the Preliminary Approval Order to offer a more accurate means of calculating Class Members' putative settlement share. [D. 60]. The Court granted the Crawford Defendants' Joint Motion to Amend the Preliminary Approval Order. [D. 63]. Consistent with the Court's Order and the terms of the Stipulation, Simpluris, Inc., the claims administrator ("Claims Administrator"), sent notice to Class Members informing them of their rights under the Stipulation, including the right to make a claim against the settlement fund, opt-out of the Settlement, or object to the Settlement.

At the conclusion of the claims period, no Class Members had timely objected to the Settlement (including the proposed attorneys' fees), and only seven Class Members, constituting .30% of all Class Members, filed timely elections to opt-out of the Settlement, which demonstrates the positive reaction of the Class Members to the terms of the Settlement. Of the Two Thousand Two-Hundred and Eighty-Five (2,285) Class Members, Three-Hundred and Fifty-Four (354)

1

elected to participate in the Settlement and make a claim against the settlement fund, which, for the reasons explained in greater detail below, is a substantial percentage under the circumstances. *See* Simpluris Claims Administrator, Mary Butler's Declaration, attached hereto as Exhibit 1, ¶ 10 (hereinafter referred to as "Butler Decl. ¶ _____ .").

The settlement is fair, reasonable, and adequate under the standards for evaluating class action settlements in this Circuit, and certification of a class for settlement purposes only (which does not require an assessment of the manageability requirement of Fed. R. Civ. P. 23(b)(3)) is appropriate.  For the reasons set forth below, in exchange for the releases of claims and other commitments described in the Stipulation, the Crawford Defendants agreed to pay a maximum of ███████████████████████████████████████████ in monthly installments into a settlement fund to be administered by the Claims Administrator.  McDonald's did not contribute to the settlement fund.  Because the Crawford Defendants are funding the Settlement based upon a pre-determined agreed upon and approved payment plan, disbursement of the funds cannot be made to the claiming Class Members until April 16, 2015.  Nonetheless, because all prerequisites for approval of the Settlement and class action certification have been met, the Parties respectfully request that the Court grant final approval of the Settlement and, absent an intervening motion, authorize disbursement of the Settlement funds to the Claimants on April 16, 2015.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2013, Plaintiff filed a Complaint on behalf of himself and similarly situated employees.  Plaintiff filed his First Amended Complaint ("Amended Complaint") on June 25, 2013.  On July 26, 2013, both the Crawford Defendants and McDonald's answered Plaintiff's First Amended Complaint.  On August 9, 2013, the Parties filed their Report of the Parties' Planning Meeting.  In that report, the Parties agreed to conduct discovery in phases.  The first phase ("Phase

I") was limited to discovery bearing upon potential class certification and whether McDonald's is a proper defendant.  On October 29, 2013, the Crawford Defendants and McDonald's took Plaintiff's Phase I deposition.  The Parties also exchanged extensive documentation and other information.

Count I of Plaintiff's Amended Complaint asserts (and was resolved on a collective-wide basis) a violation of the Fair Labor Standards Act ("FLSA") based upon the Crawford Defendants' purported failure to pay their employees for all hours worked in excess of forty in a work week. Count II of Plaintiff's Amended Complaint asserts (and is being resolved on a class-wide basis) violations of the New York Labor Law ("NYLL") based upon the Crawford Defendants' alleged failure to provide required wage notices and wage statements, and purported failure to provide employees with the requisite uniform maintenance reimbursement, among other claims, under NYLL.  Counts III and IV of Plaintiff's Amended Complaint assert individual claims for alleged retaliation under the FLSA and NYLL, respectively.  Counts III and IV of Plaintiff's Amended Complaint were resolved via a private and individual confidential settlement agreement with Plaintiff.  The Court dismissed Counts III and IV with prejudice on June 25, 2014.  [D. 62].

## II.    TERMS OF THE PROPOSED SETTLEMENT

After extensive negotiations, including, *inter alia,* a settlement conference before Judge Baxter, the Parties reached an agreement to settle the claims contained in Counts I and II of Plaintiff's Amended Complaint on a class-wide basis and resolve Plaintiff's individual claims against Defendants.[1]  The proposed terms and conditions of settlement are set forth fully in the Stipulation and Joint Motion to Amend the Preliminary Approval Order, which the Court already has preliminarily approved.  Below is a brief summary of certain settlement terms.

---

[1] The entire settlement, both on a class-wide and individual basis is being funded by the Crawford Defendants.

## A.      The Class

The Rule 23 class identified in the Stipulation consists of "any individual who worked for the Crawford Defendants for at least one day in the State of New York at any point from May 6, 2007 to May 13, 2014."

## B.      The Settlement Fund

The Stipulation created a maximum fund of  ██████████² to settle the putative Class Members' claims against the Defendant (the "Fund").  [D. 57-3, § 13(a)].  The Fund provides funding for all settlement shares claimed by the Claimants, proposed attorneys' fees and costs, the Claims Administrator's fees and costs, and the Crawford Defendants' share of applicable payroll taxes.  *Id.*  The remaining amount of the settlement fund, after the aforementioned deductions, will be disbursed to class members in accordance with the Stipulation on a claims-made, reversionary basis.   No service fees will be paid to Plaintiff individually.  McDonald's is not contributing to the settlement funds.

## C.      Class Notice and Payments to Claimants.

As of November 24, 2014, the Crawford Defendants have deposited ████████████ ████████████ into the Fund.  Because this Court preliminarily approved the Settlement on a claims made, reversionary basis, and for the reasons set forth in more detail below, the Crawford Defendants are only required to deposit a total of ████████████ ████████████ into the Fund for it to be Fully Funded, as defined in the Stipulation [D. 57-3, § 13(a)].   Based upon the Crawford Defendants' calculations, the Fund will be Fully Funded on April 15, 2015.³

---

² The Crawford Defendants will submit an un-redacted copy of this Motion to the Court for an *in camera* review.
³ *See* Section V, *infra,* for the Parties' proposed procedure for entering the Final Approval Order but delaying disbursement of the Fund until it is Fully Funded, on or about April 16, 2015.

FPDOCS 30251892.1

On June 26, 2014, the Crawford Defendants provided Simpluris with a mailing list containing Class Member names, employee number, Social Security number, last known address, hours worked, date of last pay check, and a percentage of their respective settlement share, based upon each Class Member's total number of hours worked during the class period ("Class List"). Butler Decl. ¶ 6.   The Class List contained data for 2,285 Class Members.   *Id.*   The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id.* at ¶ 7.   On July 15, 2014, Notice Packets were mailed to 2,285 Class Members with addresses contained in the Class List via First Class mail.  *Id.* at ¶ 8.  Class Members had the choice to notify Simpluris of objection or opt-out within sixty (60) days after the mailing of the Class Notice.  As of the deadline, September 23, 2014, Simpluris received zero objections to the Settlement and only seven individuals submitted an opt-out form.  *Id.* at ¶¶ 11-12.   Three-Hundred and Fifty-Four Class Members ("Claimants") elected to participate in the Settlement and made a claim against the Fund.

Upon final approval and after the Fund is Fully Funded, each Claimant will receive a cash payment from the Fund consisting of a *pro rata* share of the funds based upon each respective Claimant's compensable work hours worked during the period of May 6, 2007 through May 13, 2014.  [D. 60].  Thereafter, Claimants shall have ninety (90) days to cash their *pro rata* share or they will forever lose their right to do so.  [D. 57-3, § 14(g)].  The highest settlement share to be paid is approximately ████████████████████████████████ and the average pay out to the Claimants is approximately ██████████████████████████ ██████.  Butler Decl. ¶ 10.  In total, the Crawford Defendants will pay ████████████████ ████████████████████████████ to the 354 Claimants, consisting of approximately 26.12% of the Net Settlement Amount.  *Id.* at ¶ 10.

**D.     Releases**

All Class Members who did not timely opt-out of the settlement will release all state and local wage/hour and wage claims, as described more specifically in the Stipulation. [D. 57-3, § 16(c)].  The Claimants, who completed a valid claim form against the Fund, will release all federal, state and local wage/hour and wage payment claims, including FLSA claims, as described more specifically in the Stipulation.  [D. 57-3, § 16(b)].  Plaintiff Jeffrey Schuyler released all claims asserted in the Amended Complaint and federal, state and local wage/hour and wage payment claims, including FLSA claims, as well as all other legally waivable claims, as described more specifically in the Stipulation, by virtue of an individual settlement agreement, which was tendered to the Court for *in camera* review and approval.  [D. 57-3, § 16(a)].

**E.     Allocation Formula**

The "Net" amount of the Fund will be the amount remaining after deducting approved attorneys' fees and costs, costs associated with administration of the settlement, and the Crawford Defendants' portion of the payroll taxes owed on any payments to be made to Class Members. Claimants will share a portion of the Net pursuant to an allocation formula set forth in the Parties' Joint Motion to Amend the Preliminary Approval Order.  [D. 60].  The allocation formula is based upon the number of compensable work hours each Claimant worked from May 6, 2007 to May 13, 2014, as compared to the total number of hours worked by all Class Members during the same time frame.  [D. 60].

**F.     Attorneys' Fees**

Plaintiffs' counsel requests attorneys' fees and reimbursement of costs in the total amount of ███████████████████████████████████████████████████████████████████, to which Defendants do not object.  [D. 57-3, § 14(c)].  The fees sought by class counsel are

discussed in greater detail below.  *See* Section III(c), *infra*.  None of the Class Members have objected to the proposed fees and costs.

###### G.      Settlement Claims Administrator

The Parties selected Simpluris to serve as the Settlement Administrator.  All of the Settlement Administrator's fees will be paid from the Fund. The total amount due to the Claims Administrator is ████████████████████████████.  Butler Decl. ¶ 14. Sumpluris' responsibilities are more fully laid out in the Stipulation (57-3, § 6(a)) and Ms. Butler's Declaration.  (Exhibit 1).

## III.    ARGUMENT AND AUTHORITIES

#### A.      Standard

Rule 23 requires court approval of all class action settlements. Fed. R. Civ. P. 23(e). A class action settlement should be approved if it is "fair, adequate and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 112 (S.D.N.Y. 1999). The proposed Settlement satisfies the requirements of Rule 23 for settlement purposes and should be approved by the Court.

In assessing whether a proposed class action settlement is fair, adequate and reasonable, the Second Circuit has identified a number of factors that courts should consider.  These factors include: (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability at trial; (v) the risks of establishing damages; (vi) the risks of maintaining the class action through the trial; (vii) the ability of defendants to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible

recovery; and (ix) the negotiation process and the opinion of competent counsel. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

The decision whether to approve a class action settlement lies within the Court's broad discretion. *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it was actually trying the case." *Grinnell*, 495 F.2d at 462. In this regard, courts consistently have concluded that the function of a judge reviewing a settlement is not to rewrite the agreement reached by the parties or to try the case by resolving issues intentionally left unresolved. *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 (1981). Rather, the court's function is to determine whether the settlement is fair, reasonable and adequate. *Joel A.*, 218 F.3d at 138.

**B.     The Proposed Settlement Is Fair And Adequate To The Class.**

**1.     Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to completing class discovery, trial, motions for class and conditional certification, any motions for decertification, dispositive motions, and appeals, the Parties seek to avoid significant expense, time, and uncertainty (including the potential inability to collect any judgment), and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts consistently hold that the complexity, expense and likely duration of litigation are all factors supporting approval of a settlement. *See, e.g., Grinnell*, 495 F.2d at 463; *D'Amato*, 236 F.3d at 86; *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675

F.3d 456 (2d Cir. 1982) (unless settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results)

Although the Parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in additional expense, delay, and uncertainty. The Parties would have conducted additional discovery, including depositions, Plaintiff would move for class certification pursuant to Fed. R. Civ. P. 23, which Defendants would have vehemently opposed, and Defendants would have moved, if necessary, for class decertification and summary judgment, each at significant cost and uncertainty to the Parties. Moreover, McDonald's intended to strenuously oppose any allegations that it employed or jointly-employed Plaintiff or any Class Member. A complicated trial would be necessary, featuring extensive testimony by the Crawford Defendants' supervisors and employees, Plaintiff and class members, and possibly, expert testimony. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides. A trial of the damages issues, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to Claimants in a prompt and efficient manner. The Settlement secures for the Class Members a reasonable and immediate benefit without the additional significant expense, prolonged delay, and inevitable risk of continued litigation. *See Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 122 (S.D.N.Y. 2001) (settlement takes into account the Plaintiff class's difficulties in wining judgment and proving damages). Therefore, the first *Grinnell* factor weighs in favor of final approval. *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003) (approving settlement where action "would have taken many more years to finally resolve,

9

taking into account the time necessary to exhaust all avenues of review.").

### 2.     The Reaction Of The Class Is Positive (*Grinnell* Factor 2).

"A favorable reception by the Class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *In re PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "it is well settled that 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citation omitted). Here, this factor weighs in favor of the Court's approval of the Settlement.

On July 15, 2014, Notice Packets were mailed to 2,285 Class Members with addresses contained in the Class List via First Class mail. Butler Decl. ¶ 8. Class Members had the choice to notify Simpluris of objection or opt-out within sixty (60) days after the mailing of the Class Notice. As of the deadline, September 23, 2014, Simpluris received **zero objections** to the Settlement and only seven individuals submitted an opt-out form. *Id.* at ¶¶ 11-12. Three-Hundred and Fifty-Four (354) Claimants elected to participate in the Settlement and made a claim against the Fund. To reiterate, not a single Class Member has objected to the settlement. This fact alone plainly demonstrates the Class Members' favorable reaction to the Settlement. Moreover, Three Hundred and Fifty-Four (354) individuals opted into the settlement by completing a timely claim form. This number, approximately 15.49% of the total Class Members, is reasonable given both the Crawford Defendants' high turnover and the transient nature of the workforce as well as the fact that the class period extends all the way back to May 6, 2007. Consequently, many of the Crawford Defendants' former employees have changed jobs, moved, or are otherwise unavailable. Given these factors, the participation rate of Claimants as compared to all Class Members is reasonably substantial. Indeed, Courts have approved class action settlements with lower response

10

rates and without the existence of the aforementioned mitigating factors. *See Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 598 (D.N.J. 2010) (stating that "even in the simplest class action cases, a participation rate of no more than 10-15 percent is reasonably expected . . ."); *Weber v. Gov't Employees Ins. Co.*, 262 F.R.D. 431, 441 (D.N.J. 2009) (approving final settlement with 15.1% participation rate).

In sum, particularly considering the absence of objections, the Class Members' favorable reaction to the Settlement supports final approval of the Settlement by this Court. *See In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-4318, 2001 WL 709262 at *3 (S.D.N.Y. June 22, 2001) (approving settlement and finding it "particularly notable that there were no objectors").

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Resolve The Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require many more hours of discovery work for both sides, the Parties have completed enough fact investigation and discovery to accurately assess their respective positions. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

The Parties' discovery meets this standard. The Parties exchanged both formal and informal discovery, including the Crawford Defendants providing Plaintiff with their timekeeping and payroll data, consisting of tens of thousands of documents, for many putative Class Members. Defendants deposed Plaintiff pursuant to the phased discovery agreement and the Crawford Defendants shared their financial condition with Plaintiff, which eventually weighed heavily into the Parties' settlement. Moreover, the Parties have discussed at length, through the course of two

mediations, among other informal discussions, the risks associated with their respective positions. Against this backdrop, the third *Grinnell* factor favors final approval of the Settlement.

### 4. Plaintiff Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 and 5).

Although class counsel believes their case is strong, it is inherently subject to considerable risk as to liability, damages, and recovery. Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

Class Members face both factual and legal hurdles that present substantial risk, including, among others, whether they could establish that McDonald's was a joint-employer. Undoubtedly, a trial on the merits would involve significant risks as to various theories of defense, including, among others, whether Plaintiff's NYLL claims relating to uniform reimbursement or wage handouts permits Plaintiff to sue in a representative capacity. Moreover, the Crawford Defendants provided Plaintiff with the current status of their financial condition and the wherewithal to satisfy any judgment greater than the settlement amount contained herein, assuming such a judgment was entered. Plaintiff's counsel is experienced and realistic, and understands that the resolution of factual and liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome, expense, and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of final approval.

### 5. Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).

"[T]he Second Circuit has acknowledged the propriety of certifying a class solely for

settlement purposes and the Supreme Court has confirmed the viability of such certifications." *In re Global Crossing Securities and Erisa Litig.,* 225 F.R.D. 436, 451 (S.D.N.Y. 2004); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997).  In addition, settlement is often appropriate because defendants may contest class certification "thereby creating appreciable risk to the Class Members' potential for recovery." *In re Global Crossing Sec.*, 225 F.R.D. at 460. Put simply, class certification for purposes of settlement obviates the need for contentious motion practice regarding this issue, as well as the potential for a subsequent decertification motion, and streamlines the resolution of the dispute.

Although Plaintiff believes the Court would certify the Class even for trial purposes (which would require an evaluation of the manageability requirement of Fed. R. Civ. P. 23(b)(3)), class certification can be reviewed and modified at any time before a decision on the merits, and there is always a risk that the action, or particular claims, might not be maintained as a class action through trial.  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 284 (S.D.N.Y. 1999).  It is clear that Defendants would have vigorously opposed class certification, assuming Plaintiff could establish that McDonald's jointly-employed him and the Class Members, a fact Defendants strenuously dispute.  The risks associated with class certification increase the risk of maintaining the proposed class, and thus, this factor weighs in favor of settlement as well.

### 6.    Defendants' Ability To Withstand A Greater Judgment Is Not Clear (*Grinnell* Factor 7).

The Crawford Defendants are unlikely to satisfy any greater judgment than the settlement amount contained herein.   The Crawford Defendants provided Plaintiff with evidence in confidence supporting the same.   Moreover, the Crawford Defendants' likely inability to satisfy or withstand a greater judgment is borne out by the fact that the Stipulation specifies that the Crawford Defendants are to pay the settlement proceeds under a payment plan, which will not be

completed until April 15, 2015.  Furthermore, because McDonald's does not view itself as a joint-employer of Plaintiff or any Class Member, and would have strenuously opposed any finding to the contrary, McDonald's capacity to withstand a greater judgment is only minimally probative, if at all, when considering the factual and legal defenses available to it.  This factor weighs in favor of final approval.

> **7.      The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

The Crawford Defendants have agreed to settle this case for an appropriate amount.  The settlement amount represents a fair value to the Class Members given the attendant risks of litigation.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455.  "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, including the financial condition of the Crawford

Defendants, the settlement amount is reasonable and represents a fair value to class members such that final approval is warranted.  In fact, Plaintiff faced a real risk that no class would be certified based upon the lack of evidence of a systemic policy or practice of time rounding uniting the claims.  Moreover, even if a collective action were certified, the information developed in discovery and in the context of settlement discussions established that the damages for the collective would have been *de minimus*—likely well under $10,000 on an aggregate basis.  Plaintiff's state law claims also presented substantial risk for him.  Indeed, Plaintiff faced a significant risk that the Crawford Defendants would completely prevail on the merits of these claims—resulting in zero recovery.  For example, the Crawford Defendants strenuously disputed that they did not provide a sufficient wage statement, or that they did not provide, in substance, the information required to be provided in a wage handout.  Also, as to the wage handout claim, the Crawford Defendants had legal defenses bearing upon whether such a claim could even be brought on a class-wide basis.  Similarly, the Crawford Defendants had defenses to the merits of the uniform maintenance claim, including, *inter alia,* such defenses as: (a) the employees were not even wearing a "uniform" at all; and (b) Crawford provided a washer and dryer on premises free to employees that obviated the need for a uniform maintenance fee.  Because Plaintiff faced significant risk that the class would receive no monetary recovery on the New York state claims, the value of any such claims has to be heavily discounted in evaluating the reasonableness of the settlement.

### 8.    The Negotiation Process and the Opinion of Competent Counsel.

Courts also consider the negotiation process and the opinion of competent counsel in assessing the fairness of a proposed settlement.  *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) (examining whether the settlement resulted from arm's-length negotiations, after sufficient

discovery, between counsel with the experience and ability to effectively represent the interests of the Class); *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d at 510 (approving settlement where "[e]xperienced and able counsel on all sides fought aggressively . . . and negotiated feverishly . . . to produce the Settlement."). When a proposed settlement is shown to be the result of such negotiations, "'a strong initial presumption of fairness attaches to the proposed settlement.'" *In re Sumitomo Copper Litig.*, 189 F.R.D. at 280-81.

The Settlement in this case should be afforded a presumption of fairness and reasonableness because, *inter alia,* it is the product of an arm's-length negotiation conducted by experienced counsel who are familiar with all aspects of class action litigation, and the inherent risks associated therewith. *See Id.; see also* MANUAL FOR COMPLEX LITIGATION, THIRD § 30.43 (1995). Although this Court must independently evaluate the proposed settlement, it should credit the judgment of experienced counsel in doing so.

Here, Class Counsel is fully familiar with the facts and law applicable to this case, and the associated risks. Class Counsel is well acquainted with the prosecution of class actions generally, and with class-based wage and hour law claims in particular. Before entering into the settlement, Class Counsel took into account, among other things, the factors that the Court of Appeals for the Second Circuit identified in *Grinnell* as being relevant to the determination of whether a class settlement is fair, reasonable and adequate. Furthermore, the Crawford Defendants are unlikely to satisfy any greater judgment than the settlement amount contained herein. To that end, the Crawford Defendants provided Class Counsel with evidence in confidence supporting the same, which Class Counsel considered in agreeing to the settlement. The evaluation of these factors resulted in Class Counsel's recommendation that the proposed settlement be accepted as fair, reasonable and adequate, and the Settlement was reached only after an arm's-length negotiation.

In short, the *Grinnell* factors weigh in favor of approval of the settlement. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," *Frank*, 228 F.R.D. at 184, the Court should grant final approval.

###### C.      Plaintiff's Proposed Attorneys' Fees Are Reasonable.

Class Counsel contends that its attorneys' fees and costs in the total amount of █████████ ████████████████████████████████████████████████████████ are reasonable. Class Counsel spent substantial time and effort identifying, investigating, and prosecuting the class and collective nature of this lawsuit.  *Goldberger v. Integrated Resources, Inc*., 209 F.3d 43, 50 (2d Cir. 2000) (identifying time and labor as well as the complexities of the litigation among the relevant considerations for gauging the reasonableness of attorneys' fees).  Plaintiffs' counsel's declaration in support of their fee request is attached hereto as Exhibit 3.

Prosecuting the class and collective claims in this lawsuit demanded a substantial commitment of attorney time and resources.  In addition to reviewing several thousand pages of time and wage data, Class Counsel defended the deposition of the named Plaintiff, and appeared for two mediations (one with a private mediator and one with Magistrate Judge Baxter).  In addition, the Parties shared a wealth of information and legal research informally, which Class Counsel was required to review, analyze, and research, where applicable.  For these reasons, Class Counsel contends that its modest fee and cost request (just over 1/3 of the total settlement) is warranted and reasonable in light of the foregoing.  *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of other persons than . . . his client is entitled to reasonable attorney's fee from the fund as a whole.").

FPDOCS 30251892.1

**D.      The Notice Provided To Class Members Satisfies Due Process Requirements.**

To satisfy due process, the Notice provided to Class Members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The form of notice must be sufficient to accomplish this purpose. "It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as Class Counsel acted reasonably in selecting means likely to inform persons affected." *Prudential*, 164 F.R.D. at 368; *see also Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the form and method of notice satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e)(1)(B), and both already were preliminarily approved by the Court.  On June 26, 2014, the Crawford Defendants provided the Claims Administrator with the Class List, consisting of all Class Member names, employee number, social security number, last known address, hours worked during the relevant class period, date of last pay check, and a percentage of each Class Member's representative *pro rata* settlement share, assuming they completed a valid claim form.  Butler Decl. ¶ 6.  The Class List consisted of 2,285 Class Members. *Id.*  The Claims Administrator compared the addresses on the Class List with the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. Id. at ¶ 7.  In the event that any Class Member had a change of address reflected in the NCOA, the Claims Administrator used the address listed in the NCOA. *Id.*

On July 15, 2014, Notice Packets, which were previously approved by the Court, were mailed to 2,285 Class Members via First Class mail.  *Id.* at ¶ 8.  The Notice Packets advised Class

18

Members of their right to submit a Claim Form, an Election Not to Participate in the Settlement Form, an explanation of how to object to the Settlement, or to do nothing, as well as the previously approved information regarding the implication of each such action, or inaction.  [D. 57-3].  The Notice Packets also advised Class Members of applicable deadlines, including the deadline to elect to participate in the Settlement and the date and location of the Final Approval Hearing.  *Id*.  The Notice Packets included a pre-printed Claim Form identifying the Class Member's estimated Compensable Work Hours. *Id; see also* [D. 60].  A toll-free telephone number was also included in the Class Notice for the purpose of allowing the Class Members to call the Claims Administrator and make inquiries regarding the Settlement.  Butler Decl. ¶ 4. The phone system was accessible 24 hours a day, 7 days a week, and will remain operational through the remainder of the settlement process.  *Id*.

        If a Class Member's Notice Packet was returned by the U.S. Postal Service as non-deliverable and without a forwarding address, the Claims Administrator took reasonable steps to track and resend to Class Members as practicable.  *Id.* at ¶ 3.  The Claims Administrator was able to resend 88 Notice Packets by locating updated Class Member information.  *Id.* at ¶ 13.  In short, the Notice Packets were intended to, and did, inform Class Members of the lawsuit, the proposed Settlement, and the information they needed to make informed decisions about their rights. Further, the Claims Administrator exercised an abundance of caution and diligence in ensuring that the Class Members -- many of whom were highly transient -- received the Notice Materials through the best practicable means.  Accordingly, the Notice Form and distribution of the Notice Packets satisfied the due process requirements.

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

For settlement purposes, Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(e):

> any individual who worked for the Crawford Defendants for at least one day in the State of New York at any point from May 6, 2007 to May 13, 2014.

As discussed below, Plaintiff asserts that this proposed class meets the requirements for class certification for settlement purposes, and Defendants consent to provisional certification for settlement purposes only.  *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class.").

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that: questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *Id.* at (b)(3).[4]

---

[4] The Parties submit that certification is proper for settlement purposes only.  This Motion is not intended nor will it be construed as an admission by Defendants that the claims in the Action have merit or that it has any liability to

FPDOCS 30251892.1

### A.    Numerosity.

Numerosity requires a finding that the class is so numerous that joinder of all class members is impracticable.  Fed. R. Civ. P. 23(a)(1).  Courts in this jurisdiction have found numerosity to exist in cases involving approximately thirty class members.  *See Novella v. Westchester County*, 443 F. Supp. 2d 540, 546-47 (S.D.N.Y. 2006) (finding class of 24 sufficient to satisfy numerosity requirement because joinder impractical); *Town of New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 40-41 (S.D.N.Y. 1990) (same, with class of 36).

Here, the Crawford Defendants identified 2,285 Class Members.  The Class Members consist of both current and former employees of the Crawford Defendants.  Plaintiff asserts that the number of Class Members easily satisfies the numerosity requirement.

### B.    Commonality.

For a class to be certified, questions of law or fact must exist common to the class. Fed.R.Civ.P. 23(a)(2).  The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  Courts question whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. Of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  The commonality requirement is satisfied where the Plaintiffs' "grievances

---

Plaintiff or any Class Member on those claims or any other claim.  Defendants strongly dispute that they deprived Plaintiff or any member of the putative class of his or her legal rights.  Defendants reserve the right to assert any and all defenses available to them in the event settlement is not finally approved.

share a common question of law or fact." *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 4416, 2006 U.S. Dist. LEXIS 74039, at *39 (S.D.N.Y. Sept. 28, 2006).  Commonality does not require that all factual or legal issues be common to the entire class.  *Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001).  Rather, the commonality requirement will be satisfied even if the class members share only one common question of fact or law.  *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Here, every Class Member is, or was, employed by the Crawford Defendants and subject to the Crawford Defendants' overtime policy and practices as well as their pay, uniform reimbursement, wage handout, wage statement, and all other personnel policies at issue in Plaintiff's First Amended Complaint.  *See Clark* 2010 WL 1948198, at *3 (common issues that satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked")).  Consequently, Plaintiff asserts that this case involves several claimed common issues and satisfies, for settlement purposes, the commonality requirement.

## C.     Typicality.

"Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts have found typicality to be satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372,

376 (2d Cir. 1997).

Plaintiff asserts that his and the Class Members' claims rest on the same factual and legal circumstances which form the basis of Plaintiff's wage and hour claims as alleged in Counts I and II of his Amended Complaint.  Plaintiff and the Class Members were all employed by the Crawford Defendants and all subject to their personnel and pay practices and policies, as described in the section immediately above.  *See Diaz v. Eastern Locating Service, Inc*., No. 10 Civ 4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010) ("Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims.")

### D.    Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In part, "the adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  Under one test articulated by the Second Circuit in *Baffa v. Donaldson, Lufkin & Jenrettee Sec. Corp*., 222 F. 3d 52, 60 (2d Cir. 2000), two prongs must be satisfied: (1) the plaintiff's interests are not antagonistic to the interests of the other members of the Class; and (2) plaintiff's counsel are qualified, experienced, and capable of conducting the litigation.

Here, there has been no assertion that Plaintiff has any interests that are antagonistic to or at odds with those of Class Members.  *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) (Rule 23(a)(4) met where there was no evidence that

23

named plaintiffs' and class members' interests were at odds).  Plaintiff and the Class Members were all employed by the Crawford Defendants and all seek redress for the same alleged violations under the FLSA and NYLL.  Plaintiff did have additional disputed individual claims, but such claims do not conflict with the putative class claims, and were resolved between Plaintiff and the Crawford Defendants via a private settlement agreement.  In addition, as explained above, Plaintiff's attorneys are qualified and able to conduct the proposed litigation vigorously.

### E.    Certification Of The Class For Settlement Purposes Pursuant To Rule 23(b)(3) Is Appropriate.

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.

### 1.    Common Questions Predominate.

To establish predominance, Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)).  The fact that a defense "'may arise and . . . affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004).  Where plaintiffs' claims are "unified by a common legal theory"

and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

In this case, the Class Members all allege that the Crawford Defendants' alleged common policies – that the Crawford Defendants improperly "rounded" or "shaved" time; did not pay a NYLL mandated "spread of hours pay;" neither adequately reimbursed Plaintiff nor the Class Members for "uniform maintenance pay;" and did not provide timely wage handouts and wage statements as required by NYLL, among others – predominate over any factual or legal variations, including potential damages, among Plaintiff and the putative class.[5]  *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in wage and hour litigation does not impact the predominance analysis).  Courts have found predominance based on similar allegations. *See Torres v. Gristede's Corp.*, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages").

### 2.     A Class Action Is A Superior Mechanism For Settlement Purposes.

Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).  Class adjudication of this case will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.  *See*

---

[5] See footnote 4, *supra*.  Defendants deny any and all material claims brought against them by Plaintiff or any putative class member.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Moreover, a district court "need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement." *Frank*, 228 F.R.D. at 183.

Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction and a large majority of the Class Members are believed to reside in this jurisdiction. In addition, Plaintiff and Defendants are unaware of any pending individual lawsuits filed by any Class Member arising from the same allegations. Moreover, given the time and scope necessary to successfully prosecute this action, a class-wide settlement will avoid the waste and delay of potentially repetitive proceedings if certification were denied outside of the settlement context.[6]

## V.    DISBURSEMENT OF THE SETTLEMENT FUND TO CLAIMANTS

Because the Stipulation requires the Crawford Defendants to fund the Settlement on a payment plan, the Fund will not be Fully Funded and capable of being disbursed by Simpluris until April 16, 2015. Accordingly, the Parties propose this Court enter the Final Approval Order, as proposed in Exhibit 2, and dismiss this action while retaining jurisdiction to oversee the settlement disbursement. Absent intervening motion, the Parties request this Court authorize disbursement to the Claimants once the Fund is Fully Funded, which again, the Crawford Defendants anticipate occurring on or about April 15, 2015.

---

[6] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.")

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant the

Motion for Final Approval of Settlement and enter the Proposed Order attached hereto as Exhibit

2.

Dated: November 24, 2014                                 Respectfully submitted,


s/ Ryan M. Finn                                          s/ Joel W. Rice

**HACKER MURPHY LLP**                                    **FISHER & PHILLIPS, LLP**
James Hacker                                             Joel W. Rice
Ryan M. Finn                                             Jason D Keck
7 Airport Park Blvd.                                     10 South Wacker Drive, Suite 3450
Latham, NY 12110                                         Chicago, Illinois 60606
(t) 518.213.3710                                         (t) 312.346.8061
(Counsel for Plaintiff)                                  (Counsel for Crawford Restaurant Group,
                                                         LLC, Ralph Crawford d/b/a Ralph Crawford
                                                         Enterprises)

27

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 24, 2014, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to the following:

**HACKER MURPHY, LLP**
James Hacker
Ryan M. Finn
7 Airport Park Blvd.
Latham, NY 12110
(Counsel for Plaintiff)

**MORGAN, LEWIS & BOCKIUS, LLP**
Michael J. Puma
Cailin Heilig
1701 Market Street
Philadelphia, PA 19103-2921
(Counsel for McDonald's)

/s Joel W. Rice